```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND


DAVID ALMEIDA,                       :
               Petitioner,           :
                                     :
     v.                              :     CA 08-185 S
                                     :
ASHBELL T. WALL, Director,           :
Rhode Island Department              :
of Corrections,                      :
               Respondent.           :
```

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

    This is an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("the Petition") brought by an inmate at the Adult Correctional Institutions ("A.C.I.") in Cranston, Rhode Island. Petitioner David Almeida ("Petitioner" or "Almeida") alleges that his constitutional right to due process was violated when he was found guilty of a disciplinary infraction and placed in confinement and lost good time as a result. In the instant action he seeks to have the conviction expunged from his prison record and the lost good time restored.[1] See Petition at 8A-9A.

    Before the Court is a motion to dismiss filed by the Rhode Island Department of Corrections ("D.O.C."). See Respondent's

---

[1] Petitioner states somewhat inconsistently that he received "30 days loss of good time and 30 days of punitive segregation ...," Petition at 4A, but also that he seeks restoration of 36 days of good time, see id. at 9A. A record from the Rhode Island Department of Corrections ("D.O.C."), which he has attached to the Petition, reflects that he received 30 days of disciplinary confinement and 30 days loss of good time after being found guilty of the infraction. See Petitioner's memorandum ("Petitioner's Mem."), Exhibit ("Ex.") 3A (Warden's Review Letter). In a "Facts Sheet" submitted with the Petition, Petitioner indicates that he is also seeking restoration of 6 days "loss [of good time] for month of March," Petition, Attachment ("Att.") 1 ("Facts Sheet"), which loss he also appears to attribute to the infraction at issue.

Motion to Dismiss (Document #4) ("Motion to Dismiss" or "Motion"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). I have determined that no hearing is necessary.

For the reasons stated below, I find that Petitioner does not have a liberty interest in his good time credit under R.I. Gen. Laws § 42-56-24 (1998 Reenactment) and that his confinement in disciplinary segregation for thirty days is not "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," Sandin v. Conner, 515 U.S. 472, 486, 115 S.Ct. 2293, 2301 (1995). Accordingly, he is not entitled to the procedural protections set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974), see Sandin v. Conner, 515 U.S. at 487, 115 S.Ct. at 2302, and the Motion to Dismiss should be granted. I so recommend.

## I. Facts[2] and Travel

According to Petitioner:

> On March 6, 2008[,] I appeared before a classification down grade board for the purpose of review of classification status.
>
> Mr. Lachmann, the chairm[a]n of the board[,] had asked me to explain to him what had transpired in my bookings to get me there. While explaining I had referred to a previous statement, "Tell [Warden] Boyd to go and fuck himself," "he'll get his." I went on to explain how I felt I was set up by Boyd when he booked me based on a statement contained within a[n] informal grievance I had filed against him. I then went on and commented that because of my continuing animosity towards the warden for his booking me, I'd probably tell him to go and fuck himself again given the chance. I then went on to explain why I felt it best to go back to max.

---

[2] For purposes of this Report and Recommendation, the Court accepts the facts alleged in the Petition and Petitioner's Mem. as being true.

2

Petitioner's memorandum ("Petitioner's Mem.") at 1A-2A.

Following Petitioner's appearance before the classification board, he was charged with "Threatening an Employee or His/Her Family with Bodily Harm."  Petitioner's Mem., Ex. 1A (Offender's Report Page 01).  The basis for the charge as stated in the Infractional Narrative appears below:

> Inmate Almeida appeared before the Classification Board today for a possible downgrade.  He is in Segregation for making threats to Warden Steve Boyd.  In the presence of myself Bert Lachmann and Officer Joe Souza, inmate Almeida again made threats towards Warden Boyd.  He stated he wanted to go to Maximum Security and if he had to stay in this building Warden Boyd was going to keep hearing from him.  He stated "Warden Boyd can go fuck himself."  "He can shove his fist up his ass."  He was then excused from the board.

Id.

Petitioner states that because he was confined in segregation he was unable to access legal information or witnesses before his disciplinary hearing.  See Petition at 4A-5A; see also Petitioner's Mem., Ex. 2A (Offender's Report Page 03).  He alleges that during the twelve days that he was waiting for his disciplinary hearing his counselor, acting on his behalf, should have obtained statements from Mr. Lachmann and Correctional Officer ("C/O") Martineau.  See Petition at 5A.  Petitioner further alleges that his requests to have Mr. Lachmann appear as a witness were unsuccessful.  See id.

Regarding the disciplinary hearing itself, Petitioner states that "Counselor Skwirz's allegation[3] against me was never substantiated by C/O Martineau's direct testimony before the board," id. at 5A-6A, and Martineau "was present throughout the

---

[3] Counselor Skwirz is identified in the Offender's Report as the "Charging Staff Member."  Petitioner's Mem., Ex. 1A (Offender's Report Page 01).

3

entire time at the classification hearing where this incident supposedly took place," id. at 6A.  Petitioner further alleges that the hearing officer, Lieutenant Jankowski, refused to consider exculpatory evidence, namely the testimony of C/O Martineau, see id., and that Jankowski made false and misleading statements in the booking report[4] and in reporting C/O Martineau's testimony before the disciplinary board, see id. at 7A.  Petitioner additionally alleges that at the start of the disciplinary hearing, after he had sought unsuccessfully to have Jankowski reduce or dismiss "the Class #1 charge infraction,"[5] id. at 8A, Petitioner requested that Jankowski step down due to bias and that Jankowski had refused, see id.

In finding Petitioner guilty of the infraction, the hearing officer wrote:

> Based on report and past history of bookings involving Warden Boyd, Inmate admitted to making statements of confronting the warden in the possible future, however: his statement of not meaning this in a threatening manner is erroneous as who knows what he would have done if he did not receive this booking and start the process of down grade in motion and in fact receive his down grade out of medium.  W[h]ether this was meant to be serious or as manipulation to a goal is irrelevant, he has a past with the warden, and made statements that this would not end until he was removed from this building.

Petitioner's Mem., Ex. 2A.

---

[4] By the "booking report," Petitioner presumably is referring to page 03 of the Offender's Report, a copy of which is attached as Ex. 2A to Petitioner's Mem.

[5] Petitioner contends that he was charged with an inappropriate infraction.  See Petition at 3A.  He argues that the conduct described in the infractional narrative is more properly "within the moderate class #3 Disobedience infraction No. 337- 'Swearing, cursing, vulgar, abusive, insolent or any other improper language towards staff.'"  Id. at 3A-4A.  The penalty for such infraction, according to Petitioner, is "6-15 days loss of all privile[]ges – not the 30 days loss of good time and 30 days of punitive segregation that infraction [No.] 149[,] Threatening an employee with Bodily Harm carries." Id. at 4A.

Petitioner filed this action on May 14, 2008. See Docket. On May 19, 2008, the Court entered an order for the Attorney General to file a response to the Petition. See id. On June 2, 2008, the D.O.C., acting at the direction of the Rhode Island Attorney General, filed the Motion to Dismiss. See id.; see also Motion to Dismiss at 1 n.1. The matters were referred to this Magistrate Judge on June 17, 2008, see Docket, and thereafter taken under advisement.

**II. Law**

The law concerning a prisoner's Fourteenth Amendment liberty interest in good time credit is set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974). While the United States Constitution does not guarantee good time credit, an inmate has a liberty interest in good time credit when a state statute provides such a right and delineates that it is not to be taken away except for serious misconduct. See id. at 557, 94 S.Ct. at 2975 ("It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior."); id. ("[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance ...."); id. at 558, 94 S.Ct. at 2976 (holding that "[s]ince prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed").

The Court in Wolff differentiated between the revocation of good time credit versus the repeal of parole. See 418 U.S. at 561, 94 S.Ct. at 2976 ("[T]he deprivation of good time is not the

same immediate disaster that the revocation of parole is for the parolee. The deprivation, very likely, does not then and there work any change in the conditions of his liberty. It can postpone the date of eligibility for parole and extend the maximum term to be served, but it is not certain to do so, for good time may be restored. Even if not restored, it cannot be said with certainty that the actual date of parole will be affected ....").

In Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293 (1995), the Court explained that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment," id. at 482, 115 S.Ct. at 2299 (discussing the involvement of federal courts in the "day-to-day management of prisons"). The Court announced that the "time has come to return to the due process principles we believe were correctly established and applied in Wolff ...." Id. at 483, 115 S.Ct. at 2300.

> Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes **atypical and significant hardship** on the inmate in relation to the ordinary incidents of prison life.

Id. at 483-84, 115 S.Ct. at 2300 (internal citations omitted) (bold added). Applying the above analysis, the Court determined that the disciplinary placement of an inmate in segregated confinement for 30 days did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. See id. at 486, 115 S.Ct. at 2301.

The United States Court of Appeals for the First Circuit has commented upon the holdings in Wolff and Sandin. See McGuinness

6

v. Dubois, 75 F.3d 794 (1st Cir. 1996).[6]  "In Wolff v. McDonnell the Court held that a state-created right to good-time credit for satisfactory behavior, forfeitable only for serious misbehavior, is a sufficient liberty interest within the Fourteenth Amendment ...."  McGuinness v. Dubois, 75 F.3d at 797 (internal citation omitted).  The McGuinness court discussed Sandin in a footnote.  See id. at 798 n.3 ("Sandin, however, did not retreat from Wolff's holding that, if a state statutory provision created a liberty interest *in a shortened prison sentence* which results from good-time credits, revocable only if the inmate is guilty of serious misconduct, that inmate is entitled to the procedural protections outlined in Wolff.").

The First Circuit applied Sandin in Dominique v. Weld, 73 F.3d 1156 (1st Cir. 1996), stating that the new threshold test articulated in Sandin precluded a finding that the plaintiff had a liberty interest in remaining in work release status and thus barred any relief, see id. at 1160.  The court held that "[u]nder the standard announced in Sandin, we hold that plaintiff's loss of work release privileges did not affect any state-created liberty interest of his, hence did not violate the Due Process Clause."  Id. at 1161.  That court accepted the defendants' well-reasoned argument that "[i]f solitary confinement for thirty days did not, in Sandin, rise to the level of an 'atypical, significant hardship,' then surely removal from work release does not do so ...."  Id. at 1159.  The Dominique court further explained that if the loss of work release privileges were found

---

[6] In McGuinness v. Dubois, 75 F.3d 794 (1st Cir. 1996), an inmate who had been found guilty of various prison disciplinary code violations brought a § 1983 action against the prison disciplinary hearing officer and prison superintendent, see id. at 795-96.  The Court of Appeals held, among other rulings, that the denial of the inmate's request for live testimony from other prisoner witnesses at the disciplinary hearing did not violate his right to due process "on the facts of this case ...."  Id. at 800.

to be an atypical restraint "we would open the door to finding an 'atypical ... restraint' whenever an inmate is moved from one situation to a significantly harsher one that is, nonetheless, a commonplace aspect of prison existence." Id. at 1160 (alteration in original).

### III. Discussion

#### A. Liberty Interest

The D.O.C. seeks dismissal based on the Supreme Court's holding in Sandin v. Conner that the disciplinary placement of an inmate in segregated confinement for 30 days does not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, 515 U.S. at 486, 115 S.Ct. at 2301. See Memorandum in Support of Respondent's Motion to Dismiss ("D.O.C.'s Mem.") at 2-3 (citing Sandin). Given this holding, the D.O.C. argues that "[t]he penalty imposed on Petitioner (i.e., time to serve in the segregation unit, loss of good time[]) is well within the expected parameters of Petitioner's sentence." Id. at 3; see also Sandin, 515 U.S. at 485, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."). Thus, in the D.O.C.'s view, "Petitioner is attempting to utilize the federal habeas statute in order to convert this Court into a super-disciplinary board to re-hear his prison discipline." D.O.C.'s Mem. at 3.

In response, Petitioner appears to argue that pursuant to R.I. Gen. Laws § 42-56-24 he has a liberty interest in the good time credits.[7] See Objections and Replies to Respondent's Motion

---

[7] Section 42-56-24 was amended effective May 1, 2008. The prior version of the statute, which governs the instant matter, stated:

(a) The director, or his or her designee, shall keep a record of the conduct of each prisoner, and for each month that a

8

to Dismiss ("Petitioner's Reply") at 3-4.  The Court reaches this conclusion primarily because Petitioner quotes the First Circuit's statement in McGuinness v. Dubois, 75 F.3d 794 (1st Cir. 1996), that "Sandin, however, did not retreat from Wolf[f]'s

---

prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life, appears by the record to have faithfully observed all the rules and requirements of the institutions and not to have been subjected to discipline, there shall, with the consent of the director of the department of corrections, or his or her designee, upon recommendation to him or her by the assistant director of institutions/operations, be deducted from the term or terms of sentence of that prisoner the same number of days that there are years in the term of his or her sentence; provided, that when the sentence is for a longer term than ten (10) years, only ten (10) days shall be deducted for one month's good behavior; and provided, further, that in the case of sentences of at least six (6) months and less than one year, one day per month shall be deducted.

(b) For the purposes of computing the number of days to be deducted for good behavior, consecutive sentences shall be counted as a whole sentence.

(c) For every day a prisoner shall be shut up or otherwise disciplined for bad conduct, as determined by the assistant director, institutions/operations, subject to the authority of the director, there shall be deducted one day from the time he or she shall have gained for good conduct.

(d) The assistant director, or his or her designee, subject to the authority of the director, shall have the power to restore lost good conduct time in whole or in part upon a showing by the prisoner of subsequent good behavior and disposition to reform.

(e) For each month that a prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life who has faithfully engaged in institutional industries there shall, with the consent of the director, upon the recommendations to him or her by the assistant director, institutions/operations, be deducted from the term or terms of the prisoner an additional two (2) days a month.  These two (2) days a month shall be deducted regardless of the length of the sentence of the prisoner.

R.I. Gen. Laws § 42-56-24; Pub. L. 1991, ch. 183, § 2.

holding that[,] if a state statutory provision created a liberty interest *in a shortened prison sentence* which results from good-time credits, revocable only if the inmate is guilty of serious misconduct, that inmate is entitled to the procedural protections outlined in Wolf[f]." Petitioner's Reply at 4 (quoting McGuiness v. Dubois, 75 F.3d at 798 n.3).

### 1. Good Time Credit

To the extent that Petitioner contends that Rhode Island's good time statute, as it existed prior to the May 1, 2008, amendment, gave him a liberty interest protected by due process, this Court has already considered and rejected such contention in Raymond W. Lynch v. Walter Whitman, CA 03-162ML, slip op. at 13-16 (D.R.I. Mar. 22, 2005)(Report and Recommendation). As this Magistrate Judge explained in Lynch:

> The court agrees with Petitioner that Sandin has not invalidated the requirements of Wolff. Wolff, as recognized by the Supreme Court in Sandin, remains good law. See Sandin, 515 U.S. at 483, 115 S.Ct. at 2300. However, the court disagrees that the Rhode Island good time statute is equivalent to the Nebraska statute considered in Wolff.
>
> The Supreme Court attached significance to the fact that Nebraska had "provided a statutory **right to good time** [and] specifie[d] that it is to be forfeited only for serious misbehavior." Wolff v. McDonnell, 418 U.S. at 557, 94 S.Ct. at 2975 (bold added). The Nebraska statute, 83-1, 107, Neb. Rev. Stat. (Cum. Supp.1972), required the chief executive of a Nebraska penal facility to reduce, for parole purposes, the term of an offender for good behavior and faithful performance of duties while confined according to a prescribed schedule, see Wolff v. McDonnell, 418 U.S. at 547 n.6, 94 S.Ct. at 2970 n.6. Such reductions could be forfeited or withheld by the chief executive only after the offender had been consulted regarding the charges of misconduct. See id. Furthermore, another statute, Neb. Rev. Stat. § 83-185 (Cum. Supp. 1972), specifically limited the forfeiture or withholding of such reductions to cases of flagrant or serious misconduct, see Wolff v. McDonnell, 418 U.S. at

10

546-47, 94 S.Ct. at 2969-70. Thus, the statutes limited the discretion of the chief executive of the facility in three important respects. First, reductions were mandated if the offender satisfied the statutory requirement of good behavior and faithful performance of duties. See id. at 547 n.6, 94 S.Ct. at 2970 n.6. Second, reductions could only be forfeited or taken away after the offender had been consulted regarding the misconduct. See id. Third, reductions could not be forfeited or withheld except for flagrant or serious misconduct. See id.

In contrast, the Rhode Island statute pertaining to good time credit does not give such a liberty interest. Rhode Island General Laws § 42-56-24 provides that good time credit shall be deducted from a prisoner's term(s) of sentence "with the consent of the director of the department of corrections ... upon recommendation to him or her by the assistant director of institutions/ operations ...."[8]  R.I. Gen. Laws § 42-56-24(a) (1998 Reenactment). This statute also states in relevant part that the "assistant director ... subject to the authority of the director, shall have the power to restore lost good conduct time in whole or in part upon a showing by the prisoner of subsequent good behavior and disposition to reform ...." R.I. Gen. Laws § 42-56-24(d). Thus, it is discretionary and not mandatory that an inmate have his good time credit restored.

---

[8] The statute contains no limitation on the discretion of the director of the department of corrections to withhold "consent" or, for that matter, on the discretion of the assistant director of institutions/operations to "recommend[]" good time credit. Cf. Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 462, 109 S.Ct. 1904, 1909 (1989)(noting that "the failure of a Connecticut statute governing commutation of sentences to provide 'particularized standards or criteria [to] guide the State's decisionmakers,' defeated an inmate's claim that the state had created a liberty interest.") (internal citations omitted). Given that "a State creates a protected liberty interest by placing substantive limitations on official discretion," id., the lack of such limitations in the Rhode Island statute is evidence that no liberty interest has been created. See id. at 463, 101 S.Ct. at 1910 (stating requirement that "in order to create a liberty interest" the regulations at issue must "contain 'explicitly mandatory language,' *i.e.,* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow")(quoting Hewitt v. Helms, 459 U.S. [460,] 471-72, 103 S.Ct. [864,] 871-72 [(1983)]).

11

The Rhode Island Supreme Court examined the Rhode Island good time statute in <u>Barber v. Vose</u>, 682 A.2d 908 (R.I. 1996), and stated that such recommendation and consent constitute "prerequisites to the reduction of the term of a sentence through the extension of good time credits," 682 A.2d at 914 (quoting <u>State v. Ouimette</u>, 375 A.2d 209, 210 n.2 (R.I. 1977)). Thus, unlike the Nebraska statute, the Rhode Island statute does not confer upon a prisoner "a statutory right to good time," <u>Wolff v. McDonnell</u>, 418 U.S. at 557, 94 S.Ct. at 2975, but rather invests prison officials with discretionary authority to extend good time credits.[9] Additionally, there is no requirement in the Rhode Island statute that the offender be consulted before the good time is deducted from that which the prisoner has accumulated. <u>See</u> R.I. Gen. Laws § 42-56-24. This is further evidence of the discretionary nature of the authority given to prison officials. Moreover, there is no limitation that good time may be forfeited only for serious or flagrant misconduct. <u>See</u> <u>id.</u> Indeed, the statute provides that "for every day a prisoner shall be shut up or otherwise disciplined for bad conduct ...," <u>id.</u>, he loses one day of good time, <u>see</u> <u>id.</u> Thus, the statute contemplates the loss of good time even if a prisoner were confined to his cell for a period as short as twenty-four hours, a mild punishment which would clearly be insufficient for serious or flagrant misconduct. In contrast, the

---

[9] This contrasts with the Washington state statute which the Ninth Circuit considered in <u>Gotcher v. Wood</u>, 66 F.3d 1097 (9th Cir. 1995), <u>vacated by</u> 520 U.S. 1238, 117 S.Ct. 1840 (1997), a case upon which Petitioner relies, <u>see</u> Petitioner's Reply at 2, 4. In <u>Gotcher</u>, the Ninth Circuit found that "[f]or purposes of our due process analysis, the scheme of the good conduct time credit system in Washington appears to be indistinguishable from Nebraska's good conduct time credit system, which the Supreme Court in <u>Wolff v. McDonnell</u> found to confer a liberty interest on inmates." 66 F.3d at 1100 (citing <u>Wolff</u>, 418 U.S. at 557, 94 S.Ct. at 2975).
   It bears noting that after the Supreme Court vacated the judgment in <u>Gotcher</u> and remanded the case, the Ninth Circuit affirmed dismissal of Gotcher's civil rights action against the superintendent of the Washington State Penitentiary. <u>See</u> <u>Gotcher v. Wood</u>, 122 F.3d 39 (9th Cir. 1997). The Ninth Circuit also denied Gotcher's request to republish parts of its earlier opinion, <u>see</u> <u>id.</u>, and specifically stated "we do not reach the issue of whether Gotcher has a protected liberty interest in receiving good-time credits or remaining free of disciplinary segregation ...," <u>id.</u> Thus, the <u>Gotcher</u> opinion cited by Petitioner provides no support for his contention that he has a liberty interest in the good time credits.

> Nebraska statute in Wolff specified that a reduction required that the misconduct be flagrant or serious. Although [petitioner] argues to the contrary, the due process protection given to inmates with regard to good time credit by these two statutes is very different.
>
> This court is bound to accept the Rhode Island Supreme Court's determination on the issue of whether the R.I. Gen. Laws § 45-56-24 is discretionary in its application. See Salemme v. Ristaino, 587 F.2d 81, 87 (1st Cir. 1978)("It is well settled that the interpretation of a state statute is for the state court to decide and when the highest court has spoken, that interpretation is binding on federal courts."); see also United States v. Fernandez-Antonia, 278 F.3d 150, 162 (2nd Cir. 2002)("It is axiomatic ... that when interpreting state statutes federal courts defer to state courts' interpretation of their own statutes."); Puleio v. Vose, 830 F.2d 1197, 1204 (1st Cir. 1987) ("interpretation of state statute by state's highest tribunal binds federal court")(citing Salemme); Cournoyer v. Mass. Bay Transp. Auth., 744 F.2d 208, 209 (1st Cir. 1984) ("[I]t hardly need be said that the Supreme Judicial Court of Massachusetts is the 'final judicial arbiter' of the meaning of [Mass. Gen. Laws] ch. 260, § 2B."). The Rhode Island Supreme Court has determined that the good-time sentence credit statute is discretionary in its application. See Leach v. Vose, 689 A.2d 393, 398 (R.I. 1997)("there is no liberty interest created by our good time and industrial time credit statute since it is completely discretionary"); Barber v. Vose, 682 A.2d 908, 914 (R.I. 1996)("so-called good time credit for good behavior while incarcerated is not a constitutional guarantee but is instead an act of grace created by state legislation ...")(internal citation omitted).

Raymond W. Lynch v. Walter Whitman, slip op. at 13-16 (all alterations in original except for first and ninth).

Because § 42-56-24, as it existed prior to May 1, 2008, was discretionary in nature, Petitioner did not have a liberty interest in good time credit which is protected under the Due Process Clause. See Morgan v. Dretke, 433 F.3d 455, 458 n.2 (5th Cir. 2005)("[I]t is the protected liberty interest in good time

credits that implicates due process concerns and ... state law determines whether good time credits constitute a protected liberty interest in a given state."). Thus, Petitioner has no liberty interest in the 36 days of good time credit for which he seeks restoration by means of the present Petition. See Hallmark v. Johnson, 118 F.3d 1073, 1079-80 (5th Cir. 1997)("Because the state statutes have ... vested complete discretion with the state correctional authorities on the issue of restoration of good time credits forfeited for disciplinary infractions, there is no protected liberty interest in the restoration of good time credits ...."); see also Williams v. Wall, No. 06-12S, 2006 WL 2854296, at *3 (D.R.I. Oct. 4, 2006)(finding that sanction of 21 days of punitive segregation with a loss of 21 days of good time credits and 30 days loss of visitation privileges "fail[ed] to come within the reach of the 'atypical' and 'significant' benchmark which would implicate a liberty interest protected by the Fourteenth Amendment")(quoting Sandin v. Conner, 515 U.S. at 484, 115 S.Ct. at 2300).

### 2. Disciplinary Confinement

Pursuant to Sandin, Petitioner's confinement in segregation for 30 days was not "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin v. Conner, 515 U.S. at 486, 115 S.Ct. at 2301. Accordingly, the Due Process clause does not entitle Petitioner to the procedural protections set forth in Wolff. See id. at 487, 115 S.Ct. at 2302.

### B. Substantive Due Process

Petitioner also appears to argue that, apart from any liberty interest in good time credits or being free of disciplinary confinement, the lack of evidence to support the charge violated his substantive due process rights. See Petitioner's Mem. at 2A-3A. Petitioner cites Thompson v. City of

14

Louisville, 362 U.S. 199, 206, 80 S.Ct. 624, 629 (1960), in support of his argument. However, Thompson dealt with criminal offenses prosecuted in a police court and not with prison disciplinary proceedings. See id. at 625, 80 S.Ct. at 628. Thus, Thompson is inapposite. See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 456, 105 S.Ct. 2768, 2774 (1985) ("Revocation of good time credits is not comparable to a criminal conviction ...."); id. (rejecting proposition that the amount of evidence necessary to support a criminal conviction applies in context of prison disciplinary board).

Petitioner also cites Superintendent, Massachusetts Correctional Institution v. Hill. See Petitioner's Mem. at 3A. In Hill, the Supreme Court held "that revocation of good time does not comport with the 'minimum requirements of procedural due process,' [Wolff, 418 U.S.] at 558, 94 S.Ct.[] at 2976, unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. at 454, 105 S.Ct. at 2773. However, in the paragraph preceding this holding, the Court specifically stated that it was proceeding "on the assumption that the protections of the Fourteenth Amendment apply to the loss of the good time credits involved here ...." Id. at 453, 105 S.Ct. at 2773. This Court has already determined that the Rhode Island good time statute, as it existed at the time, does not give Petitioner a liberty interest in good time credits. Accordingly, Hill is inapplicable on this basis. Thus, to the extent Petitioner argues that his substantive due process rights were violated, such argument is rejected because he had no liberty interest in the good time credit[10] or in remaining free of disciplinary

---

[10] Petitioner also cites Burnsworth v. Gunderson, 179 F.3d 771, 775 (9th Cir. 1999), where the court found, on the facts of that case, that a "plaintiff's due process rights are violated even if plaintiff

15

confinement.

### C. Fair Hearing

Petitioner contends that he did not receive a fair hearing before the disciplinary board because: 1) he was denied the assistance of substitute counsel, see Petition at 4A, and the right to call witnesses, see id. at 5A; 2) the charge filed by Counselor Skwirz was not substantiated, see id.; 3) the hearing officer was not impartial, see id. at 6A; and 4) the hearing officer's written disposition and statements of findings "are baseless distortions of the truth," id. at 8A. Petitioner appears to argue that, apart from any liberty interest in good time credits, the lack of a fair hearing violated his due process rights, see Petitioner's Mem. at 3A (citing Burnsworth v. Gunderson, 179 F.3d 771, 774-75 (9th Cir. 1999))(holding that "plaintiff's due process rights are violated even if plaintiff has demonstrated no cognizable liberty interest" when a prison disciplinary board convicts him of escape after holding a hearing at which no shred of evidence of guilt is presented); see also Petitioner's Reply at 5 (citing Nonnette v. Small, 316 F.3d 872, 878-79 (9th Cir. 2002))("a lack of fair hearing violates due process, wholly apart from the conditions of confinement and without regard to the Sandin requirements").

To the extent that Petitioner contends that his due process rights can be violated at a disciplinary hearing even though no liberty interest is affected by the outcome of that hearing, the Court rejects such proposition. See Palmer v. Richards, 364 F.3d 60, 64 (2nd Cir. 2004)(holding that prisoner "had 'no right to due process [at his hearing] *unless* a liberty interest' was infringed as a result")(alteration in original); see also Scarpa

---

has demonstrated no cognizable liberty interest," id. As explained in the following section, this Ninth Circuit law is not binding on this Court, and the Court does not find it persuasive.

v. Ponte, 638 F.Supp. 1019, 1022 (D. Mass. 1986)("To prove a claim for violation of due process, the plaintiff must first demonstrate a protected liberty or property interest and then show that he was deprived of that interest without due process of law.")(citing Bd. of Regents v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706 (1972)); cf. Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989)("[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it."); id. at 461-62, 109 S.Ct. at 1908-09 ("[A]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.")(quoting Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547 (1976)). The Ninth Circuit law cited by Petitioner, Burnsworth v. Gunderson, Nonnette v. Small, supra, is not binding on this Court, and this Court does not find it persuasive.

**IV. Summary**

Because the R.I. Gen. Laws § 42-56-24, as it existed prior to May 1, 2008, was discretionary in nature, Petitioner does not have a liberty interest in good time credit which is protected under the Due Process Clause. Accordingly, Petitioner had no protected liberty interest at stake in the disciplinary hearing, and his claims for relief based on alleged violations of his constitutional right to procedural and substantive due process must be rejected.

With respect to Petitioner's confinement in segregation for 30 days, such confinement was not "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin v. Conner, 515 U.S. at 486, 115 S.Ct. at 2301. Therefore, to the extent Petitioner's claims are

based on such confinement, they must be rejected.

To the extent that Petitioner contends that his due process rights can be violated at a disciplinary hearing even though no liberty interest is affected by the outcome of that hearing, the Court rejects such proposition. The Ninth Circuit law which seemingly accepts such proposition is not binding on this Court, and it is not persuasive.

**V.   Conclusion**

For the reasons stated above, the Petition fails to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). Accordingly, I recommend that the State's Motion to Dismiss be granted. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[11]  See Fed. R. Civ. P. 72(b)(2); D.R.I. LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
December 5, 2008

---

[11] The ten days do not include intermediate Saturdays, Sundays, and legal holidays. See Fed. R. Civ. P. 6(a).